## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
-----------------------------x
                             :
JUAN T.                      :    Civ. No. 3:20CV01869(SALM)
                             :
v.                           :
                             :
KILOLO KIJAKAZI, ACTING      :
COMMISSIONER, SOCIAL SECURITY:
ADMINISTRATION[1]            :    October 25, 2021
                             :
-----------------------------x
```

### RULING ON CROSS MOTIONS

Plaintiff Juan T. ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Acting Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying his application for Supplemental Security Income ("SSI"). Plaintiff moves to reverse and remand the Commissioner's decision for further proceedings, or in the alternative, to reverse for payment of benefits. [Doc. #19]. Defendant moves for an order affirming the decision of the Commissioner. [Doc. #24]. Plaintiff has filed a reply to defendant's motion. [Doc. #25].

---

[1] Kilolo Kijakazi was appointed Acting Commissioner of the Social Security Administration on July 9, 2021. She is now the proper defendant. See Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g). The Clerk of the Court is directed to update the docket accordingly.

For the reasons set forth below, plaintiff's Motion for Order Reversing the Decision of the Commissioner **[Doc. #19]** is **GRANTED**, to the extent plaintiff seeks a remand for further administrative proceedings, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #24]** is **DENIED.**

I.   **PROCEDURAL HISTORY**[2]

Plaintiff filed an application for SSI on October 19, 2018, alleging disability beginning January 1, 2011. See Certified Transcript of the Administrative Record, Doc. #16, compiled on April 17, 2021, (hereinafter "Tr.")[3] at 161-68.[4] Plaintiff's application was denied initially on November 2, 2018, see Tr. 90-93, and upon reconsideration on January 25, 2019. See Tr. 98-100.

---

[2] In compliance with the Standing Scheduling Order, plaintiff filed a Statement of Material Facts [Doc. #21], to which defendant filed a responsive Statement of Facts [Doc. #24-2]. Plaintiff filed a reply Statement of Facts on September 7, 2021. [Doc. #26].

[3] Defendant filed a Supplemental Certified Administrative Record on June 3, 2021. [Doc. #18]. Because this is a continuation of the Certified Administrative Record compiled on April 17, 2021, the Court also refers to the Supplemental Certified Administrative Record as "Tr."

[4] Plaintiff also filed a concurrent application for Disability Insurance Benefits ("DIB") on October 19, 2018. See Tr. 169-73. Plaintiff's application for DIB was denied on October 26, 2018, because plaintiff did "not qualify for disability benefits because [he] ha[d] not worked long enough under Social Security." Tr. 85. The record does not reflect that plaintiff sought reconsideration of this denial.

On December 20, 2019, plaintiff, represented by Attorney Joanne Gibau, appeared and testified at a hearing before Administrative Law Judge ("ALJ") Eskunder Boyd. See generally Tr. 33-49. Vocational Expert ("VE") Joseph Goodman appeared and testified by telephone at the hearing. See Tr. 49-52; see also Tr. 272-73. On January 13, 2020, the ALJ issued an unfavorable decision. See Tr. 13-31. On November 5, 2020, the Appeals Council denied plaintiff's request for review of the ALJ's decision, thereby making the ALJ's January 13, 2020, decision the final decision of the Commissioner. See Tr. 1-9. The case is now ripe for review under 42 U.S.C. §405(g).

## II.  STANDARD OF REVIEW

The review of a Social Security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether the determination is supported by substantial evidence. See Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that

a claim has been fairly evaluated by the ALJ. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." (citing Tejada v. Apfel, 167 F.3d 770, 773-74 (2d Cir. 1999)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have [his] disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alterations added) (citing Treadwell v. Schweiker, 698 F.2d 137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject

the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing Carroll v. Sec. Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009)).

## III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore
entitled to benefits, plaintiff must demonstrate that he is
unable to work after a date specified "by reason of any
medically determinable physical or mental impairment which can
be expected to result in death or which has lasted or can be
expected to last for a continuous period of not less than 12
months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments
must be "of such severity that he is not only unable to do his
previous work but cannot, considering his age, education, and
work experience, engage in any other kind of substantial gainful
work which exists in the national economy." 42 U.S.C.
§423(d)(2)(A); 20 C.F.R. §416.920(c) (requiring that an
impairment or combination of impairments "significantly limit[]
... physical or mental ability to do basic work activities" to
be considered "severe" (alterations added)).

There is a familiar five-step analysis used to determine if
a person is disabled. See 20 C.F.R. §416.920(4). In the Second
Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is
> currently engaged in substantial gainful activity. If he
> is not, the Secretary next considers whether the
> claimant has a "severe impairment" which significantly
> limits his physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment,
> the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed
> in Appendix 1 of the regulations. If the claimant has
> such an impairment, the Secretary will consider him
> disabled without considering vocational factors such as

> age, education, and work experience; the Secretary
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful
> activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per

curiam). If and only if the claimant does not have a listed

impairment, the Commissioner engages in the fourth and fifth

steps:

> Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's
> severe impairment, he has the residual functional
> capacity to perform his past work. Finally, if the
> claimant is unable to perform his past work, the
> Secretary then determines whether there is other work
> which the claimant could perform. Under the cases
> previously discussed, the claimant bears the burden of
> proof as to the first four steps, while the Secretary
> must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens

of production and persuasion, but if the analysis proceeds to

the fifth step, there is a limited shift in the burden of proof

and the Commissioner is obligated to demonstrate that jobs exist

in the national or local economies that the claimant can perform

given his residual functional capacity." Gonzalez ex rel. Guzman

v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d

Cir. 2010); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009)

(per curiam). The residual functional capacity ("RFC") is what a

person is still capable of doing despite limitations resulting

from his physical and mental impairments. <u>See</u> 20 C.F.R. §416.945(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." <u>Bastien v. Califano</u>, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that 'the Social Security Act is a remedial statute to be broadly construed and liberally applied.'" <u>Id.</u> (quoting <u>Haberman v. Finch</u>, 418 F.2d 664, 667 (2d Cir. 1969)).

## IV.   <u>THE ALJ'S DECISION</u>

Following the above-described evaluation process, the ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, since October 19, 2018, the date the application was filed[.]" Tr. 27.

At step one, the ALJ found that plaintiff "has not engaged in substantial gainful activity since October 19, 2018, the application date[.]" Tr. 21. At step two, the ALJ found that plaintiff had the following severe impairments: "Status Post Right Inguinal Hernia Repair, Chronic Kidney Disease, Anxiety Disorder, [and] Post-Traumatic Stress Disorder (PTSD)[.]" <u>Id.</u>

At step three, the ALJ determined that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Pt. 404, Subpt. P, App. 1[.]" Id. The ALJ specifically considered listings 1.02A (Major Dysfunction of a Joint), 6.05 (Chronic Kidney Disease, with Impairment of Kidney Function), 12.06 (Anxiety and Obsessive Compulsive Disorders), and 12.15 (Trauma-and-Stressor Related Disorders). Tr. 21-22.

Before moving on to step four, the ALJ found that plaintiff had the RFC

> to perform light work as defined in 20 CFR 416.967(b) except he must never climb ladders/ropes/scaffolds. He may no more than occasionally climb stairs and ramps, balance, stoop, and crouch. He must never kneel or crawl. He can perform simple, routine, repetitive tasks. He can sustain concentration, persistence and pace for 2-hour segments. He may have no more than brief and superficial interaction with coworkers and no interaction with the public. Work should be with little to no changes in duties or routines, and with no work requiring independent judgment (no setting duties/schedules for others, no responsibility for the safety of others).

Tr. 23.

At step four, the ALJ found that plaintiff "has no past relevant work[.]" Tr. 26. At step five, considering plaintiff's "age, education, work experience," and RFC, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform[.]" Id.

## V.   <u>DISCUSSION</u>

Plaintiff raises several arguments in favor of reversal and/or remand. <u>See generally</u> Doc. #20. For reasons that will be discussed below, the Court finds that the ALJ erred in his evaluation of the medical opinion evidence. However, before reaching that issue, the Court first addresses the relevant time period under review.

### A.   <u>Relevant Time Period</u>

Plaintiff appeals the ALJ's decision denying his application for SSI. <u>See generally</u> Tr. 13-31. Generally, to be entitled to an award of SSI, a claimant must demonstrate that he or she became disabled at any time before the ALJ's decision. <u>See</u> <u>Frye ex rel. A.O. v. Astrue</u>, 485 F. App'x 484, 485 n.1 (2d Cir. 2012); 20 C.F.R. §§416.202, 416.203. 416.330. Here, the relevant time period would presumptively be the date of plaintiff's application, October 19, 2018, Tr. 161-68, through the date of the ALJ's decision, January 13, 2020, Tr. 13-31.

Plaintiff contends, however, that because he filed a second application for SSI on December 31, 2020, which awarded SSI benefits from that date forward, the relevant time period for consideration in this appeal is now October 19, 2018, through December 31, 2020. <u>See</u> Doc. #32 at 1. Defendant contends: "The relevant period at issue in this appeal is from October 19, 2018, the date that the SSI application at issue in this case

10

was filed, through January 13, 2020, the date of the Commissioner's final decision denying the October 2018 SSI claim[.]" Doc. #30 at 1.

Plaintiff's arguments with respect to the relevant time period are primarily directed to whether or not the Social Security Administration ("SSA") erred by failing to assign plaintiff's <u>subsequent</u> SSI application a protective filing date. <u>See generally</u> Doc. #32. Whether plaintiff is entitled to a protective filing date for his second SSI application is an issue that is not properly before the Court. To the extent plaintiff takes issue with the date used to calculate the SSI award on his <u>subsequent</u> application, plaintiff must follow the proper administrative appeal procedures for that application. <u>See</u> <u>Iwachiw v. Massanari</u>, 125 F. App'x 330, 331 (2d Cir. 2005) ("Pursuant to 42 U.S.C. §405(g), an individual must obtain a final decision of the Commissioner before a federal court can review Social Security benefit determinations." (citation and quotation marks omitted)); <u>see also</u> Doc. #27-1 at 5-6 (August 31, 2021, SSI award notice describing the appeal process).

Nevertheless, plaintiff appears concerned that the Court will not consider the evidence presented to the Appeals Council that is now part of the record in this case. <u>See</u> Doc. #32 at 5. That concern is misplaced because where, as here, the Appeals Council has denied review of the ALJ's decision, the "new

11

evidence submitted to the Appeals Council following
the ALJ's decision becomes part of the administrative record for
judicial review[.]" Perez v. Chater, 77 F.3d 41, 45 (2d Cir.
1996); see also Tr. 1-9 (Notice of Appeals Council Action).

To the extent plaintiff contends that the favorable
determination on plaintiff's second application is evidence of
plaintiff's disability in this action, see Doc. #32 at 5, the
December 2020 "finding is not itself evidence of disability but,
rather, a conclusion based on evidence. ... [T]he fact that two
ALJs may permissibly reach different conclusions, even on the
same record ... is not probative of anything." Caron v. Colvin,
600 F. App'x 43, 44 (2d Cir. 2015). On his subsequent
application, plaintiff was found disabled as of December 31,
2020. See Doc. #27-1 at 1. That determination "is not material
to h[is] disability claim here because it did not concern the
relevant period for which []he sought disability benefits. The
mere existence of a subsequent decision in a claimant's favor,
standing alone, cannot be evidence that can change the outcome
of his prior proceeding." Hairston-Scott v. Comm'r of Soc. Sec.,
No. 20-758, 2021 WL 3777581, at *2 (2d Cir. Aug. 26, 2021)
(citation and quotation marks omitted); see also Skeens v.
Shalala, 842 F. Supp. 209, 213 (W.D. Va. 1994) (Plaintiff
"cannot rely on her second [SSI] application because it has no
relevance to the 'unadjudicated period[,]'" that is, the period

between the ALJ's decision and the date of the second SSI application.). Thus, "any determinations made by the SSA with respect to the processing of plaintiff's subsequent applications cannot be considered as binding on this court's review of the administrative record presented on plaintiff's initial application." Delk v. Astrue, No. 07CV00167(JTC), 2009 WL 656319, at *9 (W.D.N.Y. Mar. 11, 2009).

Accordingly, for purposes of this appeal the Court will consider the relevant time period of October 19, 2018, through the date of the ALJ's decision, January 13, 2020. See 20 C.F.R. §416.330 ("If you file an application for SSI benefits before the first month you meet all the other requirements for eligibility, the application will remain in effect from the date it is filed until we make a final determination on your application, unless there is a hearing decision on your application. If there is a hearing decision, your application will remain in effect until the hearing decision is issued.").

B.   Evaluation of the Medical Opinion Evidence

Plaintiff contends that the ALJ's evaluations of the medical opinion evidence are not supported by substantial evidence. See Doc. #20 at 5-6. Specifically, plaintiff asserts: "Substantial evidence does not support the ALJ's finding that the Psychological Source Report of [Psychological Nurse Practitioner Jess] Adelman is not persuasive." Id. at 5.

Plaintiff also asserts that the ALJ erred by finding that "the earlier opinions of the non-examining DDS psychological consultants were persuasive[.]" Id. Defendant contends that the ALJ properly considered the medical opinion evidence in accordance with the Regulations. See generally Doc. #24-1 at 6-8.

> ### 1.   Applicable Law

The SSA has enacted new Regulations regarding the consideration of medical opinions for claims filed on or after March 27, 2017. See 20 C.F.R. §416.920c. Because plaintiff filed his application on October 19, 2018, see Tr. 162-68, the new Regulations apply to plaintiff's claim.

"Previously, the SSA followed the 'treating physician rule,' which required the agency to give controlling weight to a treating source's opinion, so long as it was well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record." Jacqueline L. v. Comm'r of Soc. Sec., 515 F. Supp. 3d 2, 7 (W.D.N.Y. 2021) (citation and quotation marks omitted). Under the new Regulations, "no particular deference or special weight is given to the opinion of a treating physician." Quiles v. Saul, No. 19CV11181(KNF), 2021 WL 848197, at *9 (S.D.N.Y. Mar. 5, 2021).

14

"Although the new regulations eliminate the perceived
hierarchy of medical sources, deference to specific medical
opinions, and assigning 'weight' to a medical opinion, the ALJ
must still articulate how he or she considered the medical
opinions and how persuasive he or she finds all of the medical
opinions." Jacqueline L., 515 F. Supp. 3d at 8 (citation and
quotation marks omitted); see also 20 C.F.R. §416.920c(a). For
applications filed after March 27, 2017, the ALJ considers
medical opinions using the factors outlined in 20 C.F.R.
§416.920c(c)(1)-(5) "as appropriate[,]" with "[t]he most
important factors" being "supportability ... and consistency[.]"
20 C.F.R. §416.920c(a); see also id. at (b)(2) ("The factors of
supportability ... and consistency ... are the most important
factors we consider when we determine how persuasive we find a
medical source's medical opinions[.]"). With respect to
supportability, "[t]he more relevant the objective medical
evidence and supporting explanations presented by a medical
source are to support his or her medical opinion(s) ..., the
more persuasive the medical opinions ... will be." 20 C.F.R.
§416.920c(c)(1). Additionally, "[t]he more consistent a medical
opinion(s) ... is with the evidence from other medical sources
and nonmedical sources in the claim, the more persuasive the
medical opinion(s) ... will be." 20 C.F.R. §416.920c(c)(2).

When "articulat[ing] [the] consideration of medical opinions" the ALJ "will articulate ... how persuasive [he or she] find[s] all of the medical opinions[.]" 20 C.F.R. §416.920c(b). In doing so, the ALJ "will explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions ... in [the] ... determination or decision." 20 C.F.R. §416.920c(b)(2). The ALJ is "not required to[] explain[,]" id., how he or she evaluated the other factors of: the medical source's relationship with the claimant; the medical source's specialization; and "other factors that tend to support or contradict a medical opinion[.]" 20 C.F.R. §§416.920c(c)(3)-(5); accord Jacqueline L., 515 F. Supp. 3d at 8.

Nevertheless, it bears noting that the new Regulations explicitly acknowledge that "[a] medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder." 20 C.F.R. §416.920c(c)(3)(v). Thus,

> [e]ven though ALJs are no longer directed to afford controlling weight to treating source opinions — no matter how well supported and consistent with the record they may be — the regulations still recognize the "foundational nature" of the observations of treating sources, and "consistency with those observations is a factor in determining the value of any [treating source's opinion." Barrett v. Berryhill, 906 F.3d 340, 343 (5th Cir. 2018).

16

<u>Shawn H. v. Comm'r of Soc. Sec.</u>, No. 2:19CV00113(JMC), 2020 WL 3969879, at *6 (D. Vt. July 14, 2020); <u>accord</u> <u>Jacqueline L.</u>, 515 F. Supp. 3d at 8.

> 2. *Analysis*

In reaching his decision, the ALJ considered the medical opinions of plaintiff's treating Psychological Nurse Practitioner Jess Adelman (hereinafter "PNP Adelman"),[5] and the opinions of the DDS non-examining psychological consultants at both the initial and reconsideration levels. <u>See</u> Tr. 25.

On December 12, 2019, PNP Adelman wrote a letter "in support of [plaintiff's] application for disability." Tr. 686. The letter describes in narrative form the frequency with which PNP Adelman met with plaintiff, and plaintiff's impairments. <u>See</u> <u>id.</u> In pertinent part, PNP Adelman wrote:

> He has made much progress in his treatment with the establishment of his current medication regimen, however this is relative to an extremely low baseline where he could barely function at all.
> ...
>
> In the past, he had no control over his life, and PTSD would manifest in violence, perpetuating a cycle of incarceration and further trauma for him. Now, with 24/7 supervision and support of his family, the right psychological medications, therapeutic interventions, he still struggles with flashbacks, intrusive memories, nightmares, hypervigilance, and sleep disturbance, but has been able to a degree of control and confidence that was never possible before. He has more impulse control

---

[5] Under the new regulations, for claims filed on or after March 27, 2017, a nurse practitioner such as PNP Adelman is considered an "[a]cceptable medical source." 20 C.F.R. 416.902(a)(7).

> now, but is still vulnerable to dissociating and
> accidentally reacting impulsively/violently if he is
> triggered while in any unpredictable environment. ...
> [H]is family has effectively ensured he has someone with
> him at all times to protect him and intervene if
> necessary. His symptoms are often distracting and
> additionally makes it difficult to remember things, such
> as appointments and medications. He relies on family to
> help him manage.

Tr. 686. The ALJ found PNP Adelman's opinion "unpersuasive"

because:

> No functional limitations are provided and there are no
> findings as to the claimant's ability to comprehend work
> tasks or relate with others. This letter highlights the
> concerns for flashbacks and impulsive reactions, but the
> underlying treatment notes show that the claimant did
> not have any such episodes. Further the indications for
> forgetfulness are not consistent with the mental status
> examination notations for intact memory and
> concentration.

Tr. 25

Plaintiff, citing the new Regulations, asserts that the

opinion of PNP Adelman "was entitled to significant weight

because it is supported by and consistent with her visit notes

and other evidence in the record. ... Substantial evidence does

not support the ALJ's finding that [the opinion] is not

persuasive." Doc. #20 at 5. Because the new Regulations no

longer require the ALJ to assign specific weight to medical

opinion evidence, see 20 C.F.R. §416.920c(a), the Court

construes plaintiff's argument as asserting that the ALJ's

decision finding PNP Adelman's opinion unpersuasive is not

supported by substantial evidence.

The ALJ found PNP Adelman's opinion unpersuasive because it does not contain functional limitations. See Tr. 25.[6] The Regulations define a medical opinion as "a statement from a medical source about what you can still do despite your impairments[.]" 20 C.F.R. §416.913(a)(2). There is no requirement that the medical opinion take a specific form. See, e.g., Chalk v. Berryhill, No. 16CV06494(JWF), 2017 WL 4386811, at *13 (W.D.N.Y. Sept. 29, 2017) (Justifying the rejection of a treating physician's "otherwise relevant opinion based on the form on which it was rendered was error.").

Nevertheless, the ALJ suggested that PNP Adelman's opinion is not supported by the record because her opinion "highlights the concerns for flashbacks and impulsive reactions, but the underlying treatment notes show that the claimant did not have any such episodes." Tr. 25. This finding directly contradicts the ALJ's prior statement that "[t]he records indicate frequent PTSD flashbacks and auditory hallucinations[.]" Tr. 24. Additionally, PNP Adelman's treatment notes extensively report plaintiff's complaints of recurring flashbacks and impulsive

---

[6] Often, the converse is true; an ALJ may find a medical source opinion to be less persuasive because it does not provide a narrative explanation. See, e.g., Josh C. v. Saul, No. 5:19CV00492(DJS), 2020 WL 5517236, at *5 (N.D.N.Y. Sept. 14, 2020) ("Courts have routinely recognized the failure to provide a requested narrative explanation on a check box form as a legitimate reason for affording a treating source opinion limited weight." (citation and quotation marks omitted)).

reactions during the relevant time period. <u>See, e.g.,</u> Tr. 425
(October 18, 2018, Medical Visit Notes: "Struggling with voices,
flashbacks, hypervigilance. Went to friend's house recently,
almost got into a fight but friend's wife held him back."); Tr.
493 (November 1, 2018, Medical Visit Notes: "Just got really
angry, worked up when receptionist here asked him his name more
than once ... Took him several minutes to calm self, became
tearful, stated he doesn't know why he got so angry because he
knows she's doing her job."); Tr. 497 (November 27, 2018,
Medical Visit Notes documenting symptoms of "frequent
flashbacks, intrusive thoughts/images, nightmares[]"); Tr. 505
(December 11, 2018, Medical Visit Notes: "[O]ften hears voice of
mother's murderer ... Today, pt. presents as decompensated,
dissociated, distracted by voices[.]"); Tr. 584 (January 8,
2019, Medical Visit Notes: "Some triggering talks that caused pt
to become upset, hit a coffee table, left the room ... Continued
low mood, anxiety, trauma-related re-experiencing[.]"); Tr. 508
(January 11, 2019, Medical Visit Notes: "Reports his father came
to visit him recently, was very upsetting, pt became angry, ...
Pt reports he lost control, ... almost destroyed his father's
phone."); Tr. 577 (January 15, 2019, Medical Visit Notes: "Still
isolating to avoid people and triggers, out of fear of
dissociating and lashing out/accidentally hurting someone.");
Tr. 563 ("March 22, 2019, Medical Visit Notes: "Reports he

20

continues to hear the voices, and has intrusive reexperiencing thoughts, however he does not feel controlled by it most of the time."); Tr. 638 (April 15, 2019, Medical Visit Note: "Reports he continues to hear voices, and has intrusive reexperiencing thoughts, however, does not feel controlled by it most of the time."); Tr. 644 (June 19, 2019, Medical Visit Notes: "He continues to struggle with intrusive memories[.]"). Accordingly, the ALJ's statement that the record does not reflect any episodes of plaintiff experiencing flashbacks or impulsive reactions is not supported by the record.[7]

The ALJ also stated that "the indications for forgetfulness are not consistent with the mental status examination notations for intact memory and concentration." Tr. 25. Although plaintiff's cognitive exams generally reflect intact findings, PNP Adelman's treatment notes also consistently note how plaintiff's family members help him manage, including treatment and medication reminders. See Tr. 425 (October 18, 2018, Medical Visit Notes: "Reports he continues to take all meds as

---

[7] The March 30, 2020, opinion of Ryan Wallace, which indicates the onset of plaintiff's disability as, inter alia: "Long-standing," Tr. 741, also endorses plaintiff's symptoms of: "Impairment of impulse control[;]" "Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress[;]" isolation; hallucinations; and "Pathologically inappropriate suspiciousness or hostility[.]" Tr. 736. Mr. Wallace opined, in pertinent part, that plaintiff has "[n]o useful ability to function" in the social aspects of employment. See Tr. 738-39.

prescribed, daughter ensures he takes them daily and reminds him of appointments."); Tr. 507 ("Lives with daughter who helps him tremendously, ... helps w/ treatment adherence[.]"); Tr. 641 (May 15, 2019, Medical Visit Notes: "Daughters and father are monitoring him daily, ... Daughter he lives with takes care of him [] ... She administers his meds."); Tr. 647 (July 22, 2019, Medical visit Notes: "ADHD-like sx: trouble concentrating, forgetful, relies o[n] family for reminders"); Tr. 650 (August 26, 2021, Medical Visit Notes: "Daughter lays out his meds daily."). This is consistent with plaintiff's Adult Function Report, which states that his "step-daughter calls ... to remind" him to take his medications. Tr. 201; see also Tr. 233. Plaintiff's treatment records also consistently note plaintiff's "ADHD symptoms: trouble concentrating." Tr. 425; Tr. 493; Tr. 497; Tr. 504; Tr. 508; Tr. 563; Tr. 571; Tr. 574; Tr. 577; Tr. 584; Tr. 638. The Emergency Department records from plaintiff's psychiatric admission further note that plaintiff's "[c]ognition and memory are impaired." Tr. 594. These findings, which are not otherwise acknowledged by the ALJ, are all generally consistent with and otherwise support the statements in PNP Adelman's opinion.

More concerning, however, is the ALJ's finding that the opinions of the DDS non-examining psychological consultants at

the initial and reconsideration levels are "persuasive[.]" Tr.

25. In support of this finding the ALJ stated:

> The undersigned accepts that the claimant can perform
> short and simple tasks and that he can sustain
> concentration, persistence and pace for such tasks. The
> undersigned also accepts that he requires work apart
> from the public and coworkers.

Id.[8]

As an initial matter, the ALJ failed to adequately explain

the supportability and consistency factors underlying his

conclusion that the opinions of the DDS psychological

consultants are persuasive. See 20 C.F.R. §416.920c(b)(2) ("[W]e

will explain how we considered the supportability and

consistency factors for a medical source's medical opinions ...

in your determination or decision."). Rather, the ALJ merely

asserted that he accepted certain of the consultants' opinions,

without explaining whether the consultants' remaining opinions

were also accepted. See Tr. 25.

> The new regulations cannot be read as a blank check
> giving ALJs permission to rely solely on agency
> consultants while dismissing treating physicians in a
> conclusory manner. On the contrary, many district courts
> in the Second Circuit, when presented with these
> regulations, have concluded that the factors are very
> similar to the analysis under the old rule.

---

[8] The ALJ found the opinions of the non-examining DDS medical
consultants at the initial and reconsideration levels
"unpersuasive[.]" Tr. 25. Plaintiff does not take issue with
this aspect of the ALJ's decision.

Dany Z. v. Saul, No. 2:19CV00217(WKS), 2021 WL 1232641, at *12
(D. Vt. Mar. 31, 2021).

Additionally, the ALJ erroneously credited the opinions of
the DDS psychological consultants over that of PNP Adelman.
"[T]he opinion of a consultative examiner may override the
opinion of a treating physician, ... where the opinion of the
consultative examiner is better supported by the record."
Jacqueline L., 515 F. Supp. 3d at 811 But, "if nonexamining
agency consultants have reviewed only part of the record, their
opinions cannot provide substantial evidence to support the
ALJ's RFC assessment if later evidence supports the claimant's
limitations." Shawn H., 2020 WL 3969879, at *8 (citation and
quotation marks omitted). "[T]his fundamental proposition is not
altered by the new regulations that empower the ALJ to consider
whether the new evidence received after the medical source made
his or her medical opinion makes the medical opinion more or
less persuasive." Id. (citation and quotation marks omitted);
accord Dayle B. v. Saul, No. 3:20CV00359(TOF), 2021 WL 1660702,
at *5 (D. Conn. Apr. 28, 2021) ("Though treating physicians'
opinions are no longer entitled to controlling weight, their
importance is still recognized.").

The DDS psychological consultants reviewed medical records
dating through December 2018. See Tr. 60, Tr. 74-75. Their
opinions do not account for over a year of mental health

24

records, including the opinion of PNP Adelman and records of an
inpatient psychiatric hospitalization. See generally Tr. 563-88;
Tr. 592-617; Tr. 623-89. These records undermine the DDS
psychological consultants' opinions, including the conclusion
that plaintiff was just mildly to moderately limited in the
paragraph B domains.[9] For example, in January 2019, PNP Adelman
stated that despite plaintiff's "improvements relative to his
severe baseline sx," plaintiff's "PTSD sx are still debilitating
and he struggles to reintegrate into the greater community and
function without being triggered." Tr. 575. PNP Adelman came to
this conclusion after plaintiff "[e]ndorse[d] worsening of
depression, [suicidal ideation, auditory hallucinations], voices
more intense/aggressive[.]" Tr. 574. Also in January of 2019,
plaintiff reported that he was "[s]till isolating to avoid
people and triggers, out of fear of dissociating and lashing
out/accidentally hurting someone." Tr. 577. PNP Adelman again
noted that plaintiff's "PTSD sx still impair his ability to
function normally within the community[.]" Tr. 578. During this
visit she observed plaintiff to be "visibly hypervigilant, ...
restless, guarded[.]" Id. Plaintiff also confirmed the presence
of auditory hallucinations. See id. Later that month, plaintiff
presented to the Yale-New Haven Emergency Department as anxious

---

[9] The opinion of Ryan Wallace also undermines aspects of the DDS
psychological consultants' opinions. See generally Tr. 735-41.

and agitated, with delayed speech and active hallucinations. See Tr. 594. He was admitted for two days' observation. See Tr. 600.

In April 2019, plaintiff continued to isolate "most of the time out of fear of potentially dissociating/losing control/accidentally hurting someone if triggered in public." Tr. 638. His friends and family kept "him supervised and safe." Id. Over the next few months plaintiff continued to isolate. See Tr. 642 (May 14, 2019, Medical Visit Notes: "PTSD symptoms remain disabling much of the time, doesn't leave the house most of the time unless accompanied out of fear of inadvertently harming someone when triggered, lashing out and getting hurt himself."); see also Tr. 641, Tr. 645. In August of 2019, although plaintiff was feeling some improvement in his symptoms, his family was "reluctant to leave him alone w/o family or friends for more than 5 min because they are worried [plaintiff] could get triggered around strangers as in the past[.]" Tr. 650. Overall, the records post-dating the DDS psychological consultants' opinions present a much more guarded picture of plaintiff's condition than the records the DDS psychological consultants reviewed in 2018.

Under the prior Regulations, "the Second Circuit signaled that it may be especially important to give weight to treating physicians regarding mental health opinions because records of mental health diagnoses may be less clear than actual

consultations." <u>Dany Z.</u>, 2021 WL 1232641, at *12. That premise "has not disappeared in the face of the new regulations[.]" <u>Id.</u> Here, for the reasons discussed above, the ALJ erred by relying on the opinions of the DDS psychological consultants (who never examined plaintiff and relied on a partial record to form their opinions) over that of plaintiff's treating source, PNP Adelman. Accordingly, on remand, the ALJ shall re-evaluate the medical opinions of record in accordance with 20 C.F.R. §416.920c.

    C.   <u>Remand for Further Administrative Proceedings</u>

Plaintiff requests that the Court remand for further proceedings, or alternatively, to remand for a calculation of benefits. <u>See</u> Doc. #20 at 1, 3, 25.

"Sentence four of 42 U.S.C. §405(g) provides that, after reviewing the Commissioner's determination, a court may: enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." <u>Butts v. Barnhart</u>, 388 F.3d 377, 384 (2d Cir. 2004) (quotation marks and footnote omitted). Reversal with a remand solely for a calculation of benefits is an appropriate remedy only where "the record provides persuasive evidence of total disability that renders any further proceedings pointless." <u>Stacey v. Comm'r of Soc. Sec. Admin.</u>, 799 F. App'x 7, 11 (2d Cir. 2020) (citation and quotation marks omitted); <u>see</u>

27

also <u>Munford v. Apfel</u>, No. 97CV05270(HB), 1998 WL 684836, at *2
(S.D.N.Y. Sept. 30, 1998) ("[T]he determination of whether a
remand would serve no purpose is a forward-looking analysis.
That is, the district court evaluates whether it would be
pointless to remand a case since the totality of evidence the
ALJ will consider suggests only one result."). Here, a further
review of the medical evidence would "plainly help to assure the
proper disposition of the claim[.]" <u>Butts</u>, 388 F.3d at 385.
Moreover, given the errors claimed by plaintiff, including that
the ALJ failed to properly evaluate his credibility, a remand
for further proceedings, as opposed to a remand for a
calculation of benefits, is the appropriate remedy.

Finally, this case does not have a history of a prior
remand. "The 'no purpose' remand[] ... is grounded in equitable
considerations and is often deployed where prior administrative
proceedings and litigation have consumed an inordinate length of
time." <u>Munford</u>, 1998 WL 684836, at *2. Such equitable
considerations are not present here.

Accordingly, this matter is hereby remanded for further
administrative proceedings consistent with this Ruling. On
remand, the ALJ shall address the other claimed errors not
otherwise addressed herein. Finally, the Court offers no opinion
on whether the ALJ should or will find plaintiff disabled on

remand. Rather the Court finds remand is appropriate for further consideration of the evidence

**VI.**   **CONCLUSION**

For the reasons set forth herein, plaintiff's Motion for Order Reversing the Decision of the Commissioner **[Doc. #19]** is **GRANTED**, to the extent plaintiff seeks a remand for further administrative proceedings, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #24]** is **DENIED.**

SO ORDERED at New Haven, Connecticut, this 25th day of October, 2021.

                 /s/ _____
                 HON. SARAH A. L. MERRIAM
                 UNITED STATES DISTRICT JUDGE